[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This presentment is made by the Statewide Grievance Committee that Michael J. Kenney, III has been guilty of misconduct not occurring in the presence of the Court. The parties have consented to a "Stipulation of Facts," (Plaintiff's exhibit 1) agreeing to all the material facts and signed by both parties. Mr. Kenney was admitted to the Bar in 1986. The incidents which have given reason to this presentment occurred beginning in June of 1993. Mr. Kenney was retained by Mr. and Mrs. David Rich (hereinafter "Richs") to represent them in the sale of their home on Pomeraug Avenue, in Sandy Hook, Connecticut, (hereinafter the "Pomeraug Property"). Mr. and Mrs. John Prusak (hereinafter "Prusaks") made an offer to purchase the Pomeraug property. Thereafter, the Richs and the Prusaks entered into a written contract. At that time, an earnest money deposit of $1,550.00 was paid by the Prusaks and the contract provided that an additional deposit of $14,400.00 to be paid to the Richs by the Prusaks upon the sale of the Prusaks home. In that same month, June 1993, after entering into the contract for the sale of their house, the Richs entered into an agreement to purchase another house and retained Mr. Kenney to represent them in this transaction as well. The Richs agreed to purchase a home on Twist Road, in Newtown Connecticut (hereinafter "Twist Hill") from Mr. and Mrs. Arnold Valentine, (hereinafter "Valentine") and pursuant to that agreement, paid a total deposit of $11,810.00. Thereafter, problems developed with both contracts. The Prusaks, the prospective buyers of the Richs' Pomeraug property, did, in fact, sell their own home, but did not advance the additional $14,000.00 deposit as was required under the contract, and then, failed to close as per their agreement with the Richs. In connection with the property which the Richs agreed to purchase from the Valentines on Twist Hill, title problems developed with respect to a driveway and a certificate of occupancy. The Richs then instructed Mr. Kenney to "terminate" the Valentine contract and seek the return of their deposit. Mr. Kenney failed to take any action with respect to the cancellation of the Valentine contract to purchase the Twist Hill property and the return of the $11,810.00 deposit. The Richs, after both sales fizzled, decided not to sell their home, but instead, decided to refinance the Pomperaug Property. Mr. Kenney returned to the Richs the earnest money deposit of $1,550.00. At the mortgage closing, he represented to the Richs that the expenses of that closing "would come" from the Prusak deposit." Mr. Rich testified at this hearing that he assumed that Mr. Kenney actually was holding the deposit. In fact, Mr. Kenney paid the refinancing expenses ($3,448.00) with his own CT Page 4151 funds. The respondent did not tell the Richs that he advanced these monies or that the additional deposit of $14,400.00 was not made by the Prusaks or that he never communicated to the Valentines' attorney of their intention to terminate that contract. Although Mr. Kenney informed his client he had instituted suit against the Valentines for the return of their deposit, in fact, this was not done. The Richs then retained new counsel and were able to recoup $4,500.00 of the $11,810.00 the Valentines were holding. It is also represented to the court that although Mr. Kenney did not have any malpractice insurance in effect at the time of these incidents, that he has settled all of the claims brought by the Richs against him with his own funds.
The petitioner charges that the respondent has violated Rules 1.3 and 1.4 of the Rules of Professional Conduct. Rule 1.3 requires an attorney to act with responsible diligence in representing a client, and Rule 1.4 entitled "Communication" requires the client to be reasonably informed and to explain matters so that the client can make informed decisions. There is no question of Mr. Kenney's lack of diligence or his failure to communicate with his client, nor has he contested these claims. Based on the stipulation of facts which Mr. Kenney has signed and the testimony of Mr. Rich and the respondent, the Court finds that the respondent Michael J. Kenney, III has violated 1.3 and 1.4 of the Rules of Professional conduct.
What is most troubling to the Court is how easily this entire matter could have been remedied. Mr. Kenney had no intention to withhold funds from his client. In fact, in this case, we have the exact opposite situation. Here, an attorney is advancing his own funds on his clients' behalf and not informing them of that fact. For some unknown reason, Mr. Kenney could not and did not inform his client as to the events as they unfolded, and then take appropriate action. It certainly was not his fault that the Prusaks failed to make the additional deposit. He was not the guarantor of that additional deposit. He could not be blamed for their breach of the agreement in failing to act in accordance with its terms. Why did the respondent, when told by his client to "terminate" their agreement, advise them that there may be no contract provision which would allow for a unilateral termination, and even if there was such a provision, that the Valentines might contest the right to terminate, which would undoubtedly result in litigation? CT Page 4152
The unfortunate part of this case is that Mr. Kenney, in acting like an ostrich rather than an attorney, caused himself and his family more harm than was at all necessary. It is difficult to inform a client that a deal has gone sour and certainly much more difficult when two deals are unraveling at the same time, but this ordinarily is not the fault of an attorney and in this case, certainly was not the fault of the respondent. Attorneys are required to bring bad tidings, and in this situation, Mr. Kenney, for some reason, was unable to do just that for his clients. The court is confident that such deficit is capable of being remedied.
Mr. Kenney has not shirked his responsibility to his client; he has admitted his mistake and voluntarily made payments to them on claims they asserted for damages they may have incurred. It was represented to the court at the hearing that the claims asserted by the Richs against Mr. Kenney have all been settled. With no evidence presented to the contrary, the court can only assume that the Richs have been fully compensated for their loss. The only fortunate part of this case is that the Richs did not suffer any financial harm. The court is not unmindful of the mental anguish the Richs did experience throughout this period which was not compensable and for which Mr. Kenney is responsible. The Court does not feel, however, any good will be accomplished by imposing a suspension upon Mr. Kenney merely to punish him. The court's goal is that the imposition of sanctions will prevent a similar incident from ever happening again. There is no question that Mr. Kenney needs the assistance of a more experienced attorney to advise him when faced with what might seem to be an unresolvable or disastrous situation. The respondent's attorney has represented to the court that he has spoken with Attorney Paul Shea of Middlebury, a man of stature and experience in the profession, and that Mr. Shea will agree to act pro bono as a Mentor for Mr. Kenney. The court is confident that if this Mentor arrangement could continue for a period of two years, there would be little likelihood of a reoccurrence of the instant problem. In addition, the court does feel that Mr. Kenney would benefit from additional education in the specific area of law that he has chosen to practice.
Mr. Kenney has not acted within the ethical standards of his profession, and has violated the rules of professional conduct and therefore, the court will render judgment by issuing CT Page 4153 a formal reprimand and imposing the following discipline upon the respondent. Mr. Kenney will avail himself of the advice and counsel of Attorney Shea, who will act as his Mentor for a period of two years. In the event that Mr. Shea, for whatever reason, shall be unable or unwilling to continue to act as the respondent's advisor and Mentor, then this should be brought to the court's attention so that another experienced attorney be named to fulfill this responsibility. Mr. Kenney shall certify that he has attended a least three "real estate" courses sponsored by the Connecticut Bar Association or another qualified provider within two years of this date. Finally, the respondent shall provide the Statewide Grievance Committee with certificates of malpractice insurance for a similar period of two years, which shall also name Mr. Shea and his successors for a period of two years as a additional insured. Failure to meet any of the imposed conditions herein set forth will result in further action by this court.
/s/ Pellegrino ------------------------ PELLEGRINO, J.